The next matter, number 24-1172, Milton Giovanni Vargas Panchi et al. v. Merrick Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Yes. Good morning, your honors. Benjamin Clubb for the appellant. I may have pleased the court. Good morning, your honors. We are here today on an underlying immigration matter. The petitioner in this case is an individual from Ecuador, and he came to the United States with his family. The circumstances that brought him here to the United States have to do with a lifetime of discrimination he experienced as an indigenous man in Ecuador, and some other facts involve a soccer game in which he was severely injured. He was taken to a public hospital where he was denied treatment, specifically because of his indigenous race. He was held at this hospital for a period of two days before he was taken to a private hospital where he did eventually receive treatment. However, he did have to remain in this hospital for a period of about six weeks, which is a pretty significant amount of time. Counsel, as I understand it, the agency said that the only thing that occurred here that amounted to persecution was the head injury, which was admittedly severe. Yes, your honor, that is correct, and that brings me to my first issue on appeal, in that the immigration judge in the BIA erred in finding that the denial of medical care was not past persecution. We ask that this issue be reviewed de novo by this court. We argue that this is an issue of law. We assert that under the case of Guerrero-Las Barrillas v. Barr, the application of settled facts to the case law merits de novo review. And in this case, specifically related to the denial of medical care, we have the settled facts of him being denied treatment because of his indigenous race. He was critically injured to the point where he ended up having to take a six-week hospital stay to recover from this injury. However, both the immigration judge and the BIA failed to take these facts and apply it to the settled law. The BIA attempted to analyze this. Excuse me. Was the argument made to the immigration judge and or the BIA that the denial of medical care was itself sufficient to constitute persecution? Yes, your honor, I would argue that it was. There was testimony on the record to support that this was a basis of his asylum claim, and that the immigration judge did address this issue. However, I would argue that they glossed over this issue. And in fact, I would argue that the immigration judge seemed to flip-flop on the issue. At one point, he does address this as part of the past persecution before he gets into the facts around the soccer game. And then later on in his brief, he ultimately concludes that just the discrimination that our client faced does not amount to past persecution. So it seems to have been addressed. And likewise, the BIA did address this and attempt to analyze it under matter of Acosta. However, once again, I would argue that the BIA tended to gloss over the settled law in matter of Acosta and simply concluded matter of factly that this doesn't amount to past persecution. So looking at matter of Acosta, the BIA puts in parentheses. Excuse me, one more question. If the BIA made such a conclusion, how do we review it? Do we review it for clear error? No, I would argue that you review for de novo review, Your Honor. And I point to the standards set forth, once again, in Guerrero, Lasparilla v. Barr, where we take settled facts and apply it to case law. And in this specific case and in the BIA's decision, they do apply some level of settled case law pointing to matter of Acosta. But I argue that there is a failure to properly analyze these settled facts to the case law set forth in matter of Acosta. So do you point to authority in this circuit holding that a determination as to whether certain conduct constitutes past persecution? Is it reviewed de novo? So I would point to matter of TZ, which gets into the denial of the essentials of life in an asylum case, taking factual issues related to whatever the denials of life are and applying that to the definition of past persecution. But is that a First Circuit case? No, that would be a case issued by the BIA. It's not a First Circuit case. So I cannot point to a First Circuit case that has the standard other than Guerrero, Lasparilla v. Barr, which seems to be the case with the clearest definition on the matter, where we're taking settled facts, which I think is what we have here, and applying it to some other case law or legal standard. But let's accept the proposition that a denial of a refusal to provide medical care because of someone's protected status or social status could be persecution, just like causing them the same harm intentionally could. That would depend on some qualitative assessment of the denial, how long it was denied, how serious the medical condition was, what harm was called, the same sort of stuff we would go through in any other persecution case. Why would there not be some deference in reviewing the subjective conclusion regarding those factors? So, Your Honor, there should be some deference. But once again, there is case law arguing that mixed questions of fact and law should be reviewed de novo, which I think is what we have here. And also, in addressing the settled facts, I argue that the IJ and the BIA never really addressed these settled facts and the severity of them. They simply point to the discriminatory actions that took place, and that is denied medical care because of its race. However, the IJ and the BIA failed to get into the severity of it, such as the 18 stitches my client was required to have, as well as the six-week hospital stay and the fact that he was left nearly unconscious. So, I would argue that this is a very significant injury. And when we apply it to the fact set forth, or the law set forth a matter of a cost in which the BIA asserts, the BIA says matter of a cost establishes that a past persecution requires some level of torture or confinement. The facts in our case do reflect a level of torture and confinement in the sense that our client was denied medical care. He's left in a hospital with very limited options. He cannot get out of there on his own power without the help of his family members because of the severity of the injury. So, because of that, we feel that the BIA and the IJ failed to apply this legal standard to the settled facts to this legal standard. Likewise, the BIA also failed to get more into detail about matter of a cost. They address matter of a cost in the sense that it requires some showing of confinement or torture for that case to apply to the denials of essentials of life. However, there's two other elements in matter of a cost that the BIA neglects to mention in that past persecution also should have to demonstrate the harm is inflicted or the harm inflicted is a punishment for possession of a belief or characteristic and that the harm inflicted must be by a government and organization. And when we look at these two prongs set forth a matter of a cost, I feel as though the BIA was wrong in their analysis of this because we have the facts that our client was denied medical care specifically for his race. So, that satisfies the first prong in a cost. And he was at a public hospital where it was denied medical care, which I would argue meets the second prong of a cost and that it was a government agency or organization that was committing the persecution. So, because of that, we argue that this issue should be reviewed de novo. It's also confinement and torture as well, right? It's a three prong. Yeah, yes. So, it's not necessarily a three prong analysis. Matter of a cost goes into great detail about what past persecution is, how it can be defined, so on and so forth. There has to be something sufficiently bad, I assume, somewhere in this, which you told me is confinement or torture. That is correct. So, I guess the standard review thing that I guess is troubling, or I don't fully understand. So, there are facts. They were left at the hospital for two days with needing stitches. And it's a serious injury. But there's probably no other case in the world with those exact facts. And then the question is, is it confinement or torture, which has some meaning? Is deciding that, is there deference to that fact? These facts about stitches in your head and being made to wait this amount of time at a hospital, that feels like a factual determination of whether that is confinement or torture. So, I would argue that it's a mixed question of fact and law. Matter of a cost certainly has its own set of facts and that it tries to address in establishing what past persecution is. Likewise, our own case has a unique set of facts. Every case will. So, the law kind of is confinement or torture. Yeah. And then here's some set of facts. And somebody has to decide whether those are confinement or torture. And that feels like, factually, it either is or isn't that. Or is that the way to think about it? I would argue that that is not the way to think about it, Your Honor. I argue that this would be a mixed question of fact and law, which has been reviewed de novo. Right. But that's easy to say. But at some point, right, that's a continuum. Right. That mixed question of law is a continuum. So, one thing is, you just don't understand what confinement or torture means. If you say it means you have to be held for a year, that's legally wrong, if you think that's what it means. But then, as you move away from that, you just start to ask these sort of granular questions about, well, exactly what this is and does that meet the standard. That feels like it becomes much more in the factual realm. So, you know, I still defer back to the mixed question of fact and law. But I do point to the fact that the IJ in the BIA failed to take these facts and apply it to any level of case law. I, in my opinion, they seem to have just glossed over the severity of the facts and applying them to the case law. There was no attempt to say why this is or is not a denial of the essentials of life, which is essentially what Matter of Acosta is all about. So, I view this as though the immigration judge and the BIA viewed this as wholly a factual issue. And they just determined that it's not past persecution without applying any level of analysis. But is your position, as I understand it, is whether this past persecution is mixed question of law and fact and mixed question of law and fact are reviewed de novo. Well, if that's your position, it seems to me we would essentially find ourselves in the position of IJs on every single persecution case. We'd have to decide de novo is their past persecution. And that's very inconsistent with the role that the circuit courts have generally played throughout this whole. I understand your point. And I disagree with you. I view this case independently in that it should be viewed de novo because there is case law on the issue of denial of medical care and what the essentials of life are for persecution. So, you're saying not all cases, not all questions of persecution are mixed questions of fact and law? Yes, that is correct. Okay. So, which ones are and which ones are? So, it would probably depend on a case by case basis. I think it would... Well, give me an example of one that's not a mixed application of mixed question of law and fact. So, I think a case where there is not a mixed question of law and fact would boil down to a much simpler claim for asylum and whether or not they meet the statutory elements of it. So, perhaps if someone just suffered some level of minor persecution in their home country of Ecuador, for instance, if they were robbed on the street and therefore they don't meet the other statutory requirements for asylum, I would argue that that would become more of a factual issue because the facts in that case simply wouldn't measure up to the settled law. Can't that be reframed to be this? I don't think that having to wait two days when I then get medical care is reach the standard. It's not persecution. It's not severe enough. It's just like some other thing that you described as trivial. Now, other people may think differently about that. And what I understood is at this level, those things get very deferential review. And it seems like what you're asking us to do would really reshape and get us into the nitty-gritty of that decision. How severe is that? We are not really well equipped to do that. So, thank you, Your Honor. And once again, I disagree with you because in this specific case, we're dealing with case law on the issue. But they got that right. Matter of a cost is the case. Yes. Here's the case. And now we're in the granular facts. And now we have to apply the granular facts to this case. We told you the right case. That seems to be where the nitty-gritty work of the facts meeting the law is. And I guess that's what I'm struggling with. What do we do with that? And if we did that to Novo, that would bring us into the middle, really, of every case because that's really where the rubber meets the road, so to speak. Yes, Your Honor. And I understand your concern. However, where there are cases where there is settled case law about a specific issue and we have facts that rise to that case law, those issues should be reviewed to Novo. Because if we have law on the matter that says a case should be found a certain way, it is the job of the BIA and the IJ to make that analysis and review that case under the umbrella of that case law. Thank you. Thank you. Your Honor, may I just request three minutes for rebuttal? I think you've used all your time.  Thank you. Thank you, counsel. At this time, would counsel for the respondent please introduce herself on the record to begin? Good morning, Your Honors. Nail Kamani, representing the United States Attorney General. Regarding the standard of review, this court applies the substantial evidence standard to factual inquiries. And here, the record shows that the board and immigration judge properly found that the harm he incurred, that Mr. Vargas incurred at a soccer game, was not on account of a protected ground. It also correctly ruled that the discrimination Mr. Vargas experienced and fears upon his return does not rise to the level of persecution. Would you agree that on a different set of facts, a denial of medical care, refusal to provide medical care because of someone's indigenous status could be persecution? It could be, depending on the facts. It is not in this case. And in fact, I did not cite to this First Circuit case in my brief, but I did find it while preparing for oral argument. And the case is Al-Biyaj. It was issued last year by this circuit. And to quote from that case... Please send us a 28-J letter with the site. I will do that, Your Honor. To quote from the case, the court states, a couple of politically motivated, excuse me, politically motivated refusals of medical treatment before petitioner abandoned her efforts, this limited impediment does not rise to the level of persecution under the law. Here, the record does not indicate that the denial of medical treatment on account of Mr. Vargas' indigenous identity rose to the level of persecution. There are many gaps in his testimony, and it was his burden of proof. Yes, he went to the hospital. What happened there thereafter is not very clear from the record. Yes, he spent two days there waiting for treatment, but how many times did he ask to be seen? What was the IJ's finding, that it was based, that he didn't get care because of his indigenous status? The immigration judge and the board acknowledge that he was refused treatment on account of his indigenous status, but they found that it did not rise to the level of persecution. In fact, the board noted that this was a one-time. Right, so I understand that part. But you started to tell me, well, all sorts of things happened there. I'm not sure those really matter if the ultimate factual conclusion of the IJ was it was based on his indigenous status. So we take that as a fact, right? At this point, that's a fact. He didn't get the medical care because he's indigenous. And then the other side says, well, that's past persecution. And so your point is not whether it happened because of his indigenous status. It just wasn't bad enough. Two days isn't bad enough. Yes, exactly, Your Honor. It wasn't bad enough. He did eventually receive treatment at the clinic. He did not claim to have any lingering consequences of the treatment he received. He seems to have fully recovered. This one-time occasion of not receiving treatment at the public hospital, it doesn't meet the severity, duration, frequency requirements for this type of discrimination to constitute persecution. As to the severity of his injury, which I acknowledge may be different than the severity of harm caused by the hospital's refusal, but as to the severity of the injury, what do you say about the six weeks of hospitalization? That makes it sound like the head injury was pretty significant. Again, there's not much in the record to go on, Your Honor. Yes, he waited there for two days. It's unclear what his state was during those two days. Why did he wait for two days? Why didn't he go immediately to the clinic? Why did he choose the public hospital? In the end, he did fully recover. It is unclear whether one person refused on account of his indigenous identity and another one saw that he wasn't that severe. He could wait, and therefore, they attended to more serious cases. There's just too many gaps in the record that we cannot fill. It is not our burden to fill those gaps. It was Mr. Vargas' burden to prove that that discrimination rose to the level of persecution, and the facts as they are in the record don't prove that. As the Supreme Court noted in Pareto, any gaps in evidence, those go against the applicant, and here there are a lot of gaps in the record. But again, those gaps, aren't they covered? Because the IJ says it wasn't because there was a more serious case, it wasn't for this other reason. It's because of his indigenous status. It seems to me you have that fact. You have he needs 18 stitches, and he needs a six-week hospital stay. Those are the facts. And then the question is, well, why is a guy who goes to a public hospital made to wait two days given that serious injury? And the answer is because he's indigenous. That's what the facts are. You can say there's other stuff, but those are the findings, right? Those are the findings. And so then the question is whether that's bad enough to be persecution. Right. And the finding was that that was not bad enough because it was a one-time incident, and it does not meet the severity, duration, and frequency requirements for an act to constitute persecution. So the gaps are on there. Speak of the severity requirement, I'm not clear whether you're talking about the severity of the injury or the severity of the harm caused by the two-day delay in treatment. The severity by the two-day delay in treatment. Another case that we do cite here... Excuse me. Is there any, at that point, is there any evidence in the record that that two-day delay caused some harm, severe or not? No, Your Honor. As stated, he did receive treatment at the clinic, and he does not seem or he did not claim to have any lingering consequences from either the delay or from the treatment he received at the clinic. He appears to have made a full recovery as per the record. Another case that we do cite too in our brief is a Ninth Circuit case. And in that case, the court is looking at whether the denial of medical treatment, the name of the case is Cole, whether the denial of medical treatment constitutes torture. Now, whether it does or not, the court did not decide, but it said it could in certain instances where there's a denial of ongoing treatment, where there is some sort of showing that without that treatment, it would be life-threatening. Those consequences were not shown here. Again, the burden was on Mr. Vargas to show that the level of discrimination rose to the level of persecution, and he failed to meet that burden. As for his fear of future persecution, the agency also found that not to be reasonable. The record shows that he lived safely in Ecuador for years. He lived safely before the incident with the opposing soccer team. He lived safely there again afterwards. His family members continue to live there safely. He admitted that there's not much discrimination in the countryside where his family lives. And he also admitted that he mainly fears the increase in crime and violence in that country, which is not a basis for asylum or any other form of protection. On the record, there is not enough evidence to show that Mr. Vargas proved eligibility for asylum and related relief. The one harm that rose to the level of persecution, his injury during the soccer, after the soccer game, he admitted that the only reason for that was because the opposing team was a bunch of sore losers. And the discrimination he suffered, including the disparate treatment at the hospital, does not amount to persecution. For those reasons, I respond and request that the court deny this petition for review. If there are no further questions, we will rest on our brief. Thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.